
**DLA PIPER**

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Shand S. Stephens
shand.stephens@dlapiper.com
T  212.335.4594
F  415.659.7328

August 7, 2013

**VIA ECF**
The Hon. Brian M. Cogan, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Linde, et al. v. Arab Bank, PLC, No. 04-CV-2799 (BMC) (VVP) and related cases*

Dear Judge Cogan:

  Pursuant to the Court's direction at the conference on July 30, 2013, Defendant Arab Bank plc (the "Bank") submits this letter brief opposing Plaintiffs' intended Motion in Limine No. 12 ("Motion No. 12") described in the First Supplement to the Joint Pre-Trial Order.

  Plaintiffs' Motion No. 12 seeks to exclude from evidence at trial the Bank's proposed trial exhibit DX 834 (listed in Arab Bank's Further Supplement to the Joint Pre-Trial Order, dated July 29, 2013 (ECF No. 972), and attached hereto as Ex. A). DX 834 is a public record issued by the White House of a press briefing by White House Press Secretary Ari Fleischer on April 12, 2002 (the "Fleischer Statement"). It is headed "The White House, President George W. Bush." It is publicly available on the government archive website for the White House at http://georgewbush-whitehouse.archives.gov/news/releases/2002/04/print/20020412-1.html. In relevant part the Fleischer Statement explains the lack of any basis for concluding in 2002 that the Saudi Committee, a charitable organization established by Saudi Arabia in 2000, was inciting violence or terrorism in the Mideast.

  Plaintiffs' Motion No. 12 also seeks to exclude the Bank's proposed trial exhibit DX 553 (listed in the Joint Pre-Trial Order, dated July 1, 2013, at Ex. G-4 (ECF No. 968), and attached hereto as Ex. B). DX 553 is a public record issued by the Department of State of an interview of Secretary of State Colin Powell on May 5, 2002 (the "Powell Statement"). DX 553 states at the top of the first page "U.S. Department of State" and "Secretary Colin L. Powell." It is publicly available on the government archive website for the Department of State at http://2001-2009.state.gov/secretary/former/powell/remarks/2002/9940.htm. In relevant part the Powell Statement also concerns the Saudi Committee.

  Plaintiffs' Motion No. 12 asks the Court to find that these public records of statements by the White House Press Secretary and Secretary of State should be excluded in limine because they are hearsay, irrelevant, and barred by the sanctions order in *Linde v. Arab Bank, plc*, 269 F.R.D. 186 (E.D.N.Y. 2010). As explained below, however, each is relevant because it concerns allegations about the Saudi Committee that are central to this case. Each is admissible under the



public records exception to the bar on hearsay (Fed. R. Evid. 803(8)) and the residual exception for trustworthy evidence (Fed. R. Evid. 807). The sanctions order does not affect United States government records like these that are made publicly available by the government.

I. **THE FLEISCHER STATEMENT IS ADMISSIBLE EVIDENCE**

The Fleischer Statement (DX 834) should be part of the evidence weighed by the jury because it concerns the Saudi Committee. Plaintiffs have made the Saudi Committee, including its purpose and actions, a central part of this case.

A. **The Fleischer Statement and the Saudi Committee**

The Saudi Committee was established by Saudi Arabia at a meeting of the Arab League in Cairo in October 2000 at the urging of the international aid community as the economic and humanitarian circumstances prevailing in Gaza and the West Bank were worsening as a result of the hardships and difficult circumstances suffered by the civilian population. As reflected in diplomatic communications obtained by Arab Bank from the Department of State pursuant to the Freedom of Information Act, the United States urged other nations in the Middle East to follow the example of Saudi Arabia in providing humanitarian aid to the needy population of the Palestinian Territories, especially because the humanitarian crisis there threatened the stability of the Palestinian Authority. (*See* Def. Arab Bank plc's Statement Of Material Facts As To Which There Is No Genuine Dispute Pursuant to Local Civil Rule 56.1, dated Aug. 8, 2012 ("Bank 56.1," filed under seal 8/8/2012) ¶¶ 321-32, 339; Bank 56.1 Ex. 15, Decl. of Shukry Bishara in Support of Def. Arab Bank's Mot. to Dismiss the *Linde* First Amended Compl., dated Nov. 11, 2004 ("Bishara Decl.") ¶¶ 30-33.)

The Saudi Committee operated in full transparency, posting all of its activities on the internet. It made payments to thousands of unemployed Palestinians, as well as individuals who were wounded or injured during the violence of the second intifada. The Committee also made payments to Palestinian schools, hospitals and other important infrastructure, as well as to the families of about 1,700 "martyrs" (individuals who were killed during that period). The payments included the families of about 11 suicide bombers.

During the period from 2000 to 2004, the Saudi Committee made approximately 200,000 payments to recipients in Palestine through Arab Bank. (Bishara Decl. ¶¶ 35-36.) The Saudi Committee instructed its bank in Saudi Arabia, the Arab National Bank (not the defendant, Arab Bank), to transfer these funds through the international payment system. The Arab National Bank maintained a correspondent banking relationship with Arab Bank during the period from



Hon. Brian M. Cogan, U.S.D.J.
August 7, 2013
Page Three

2000 to 2004. The Arab National Bank sent wire transfer instructions, originating in Saudi Arabia, to Arab Bank to disburse funds to recipients in the Palestinian Territories where the Bank had branches. (*See* Bank 56.1 ¶¶ 321-32, 343.)

Plaintiffs allege that the true purpose of the Saudi Committee was to "incentivize terrorism" and provide material support to Hamas, and that the Bank was in a "conspiracy" with the Saudi Committee and Hamas. (*See, e.g.*, *Linde* First Am. Compl. ¶¶ 304-09, 316.) Plaintiffs claim that the Bank should be found liable under the ATA because it provided banking services to Arab National Bank that was acting for the Saudi Committee, and the Saudi Committee was allegedly "incentivizing terrorism." Plaintiffs claim "the Saudi Committee constitutes a professional fundraising apparatus intended to subsidize the Intifada Al Quds, *i.e.*, to subsidize the Palestinian terror campaign." (*Linde* First Am. Compl. ¶ 304.)

The Bank denies that it knew that the Saudi Committee payments were "subsidizing" or "incentivizing" terrorism. Bank witnesses have testified that they understood the payments to be humanitarian activities. As explained below, the Fleischer Statement at issue on this motion supports the Bank's position.

In an April 12, 2002 White House press briefing, Fleischer discussed a Saudi telethon that raised money for the Saudi Committee. When asked whether the Saudi actions were an "incitement to violence," he responded that they were not:

> "According to the information that we have about the telethon, and the assurances that we have received from the Saudi government, the money is raised to help with the broader humanitarian needs of the Palestinian people. Something the United States is committed to. The United States provides assistance, financial assistance for the Palestinian people. So the simply granting of money to the Palestinian people cannot, on its face, be said to support terrorism." (DX 834 at p. 4.)

### B. The Fleischer Statement is admissible under Fed. R. Evid. 803(8) and 807

Fed. R. Evid. 803 provides in relevant part that "[t]he following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

(8) <u>Public Records</u>. A record or statement of a public office if:

    (A) it sets out:

        (i) the office's activities;



Hon. Brian M. Cogan, U.S.D.J.
August 7, 2013
Page Four

      (ii)  a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

      (iii)  in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

   (B)  neither the source of information nor other circumstances indicate a lack of trustworthiness."

    The Fleischer Statement fits squarely under Rule 803(8). DX 834 is a record or statement of a public office of the office's activities. It reports on the official activities of the White House, including the conclusion drawn by the White House in 2002 in response to questions raised about the Saudi Committee and terrorism. As the Fleischer Statement explains, the conclusions were based on direct inquiries to and assurances from Saudi Arabia.

    The source of information on the White House conclusions about humanitarian efforts by the Saudis—the White House Press Secretary—is trustworthy. As Press Secretary, Fleischer is entitled to base his statements on what others in the White House have observed firsthand. 5 Weinstein's Federal Evidence § 803.10[3][a] (2013) ("government officials may rely on colleagues or subordinates who have the requisite knowledge," citing cases). Rule 803(8) covers statements of conclusions and opinions as well as facts in a narrow sense. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 175 (1988). The Court can take judicial notice of the authenticity of the Fleischer Statement. Fed. R. Evid. 201(b)(2); *see, e.g., Stepski v. The M/V Norasia Alya*, No. 7:06-cv-01694, 2010 U.S. Dist. LEXIS 16602, at *15 (S.D.N.Y. Jan. 14, 2010) ("the Court may take judicial notice of a government-issued press release as a matter of public record"); *Conn. Mobilecom, Inc. v. Cellco P'ship*, No. 03 Civ. 6278, 2003 U.S. Dist. LEXIS 23063, at *17 n.3 (S.D.N.Y. Dec. 23, 2003) (taking notice of press releases); *Kenner v. Kelly*, No. 11-CV-2520, 2012 U.S. Dist. LEXIS 21456, at *3-4 n.1 (S.D. Cal. Feb. 21, 2012) (taking judicial notice of press release of a U.S. Senator); *United States v. Akinrosotu*, 637 F.3d 165, 168 (2d Cir. 2011) (taking judicial notice of information on Bureau of Prisons' website to determine defendant's release date).

    Therefore the Fleischer Statement about the White House conclusions in 2002 is admissible under Fed. R. Evid. 803(8). *See generally General Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1108-09 (8th Cir. 2013) (approving the admission over a hearsay objection of a press release from the United States Department of Agriculture stating that "evidence indicates" that certain beef product was unfit for human consumption and reporting a voluntary recall by beef producer; discussing cases on admission of government press



Hon. Brian M. Cogan, U.S.D.J.
August 7, 2013
Page Five

releases, including distinguishing cases that did not address Fed. R. Evid. 803(8) or discuss the contents of the press releases).

The Fleischer Statement includes reports on what was said by the Saudi government, but the Saudi statements are themselves admissible under Fed. R. Evid. 803(8) because the Rule applies to statements of foreign governments. *See, e.g., Glowczenski v. Taser Int'l, Inc.*, No. CV04-4052, 2013 U.S. Dist. LEXIS 31905, at *28-29 (E.D.N.Y. Mar. 5, 2013) (citing authority); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738; 05-CV-0453, 2012 U.S. Dist. LEXIS 142558, at *10 (E.D.N.Y. Oct. 1, 2012).

Because the White House Press Secretary is a trustworthy source, the Fleischer Statement is also admissible under Fed. R. Evid. 807 (the "Residual Exception" for trustworthy hearsay).

### C.  The Fleischer Statement is relevant to issues in this case

As explained above, Plaintiffs are asking the jury to conclude that the true purpose of the Saudi Committee was to "incentivize terrorism" and provide material support to Hamas, and that the Bank was in a "conspiracy" with the Saudi Committee and Hamas in support of terrorism. (*See, e.g., Linde* First Am. Compl. ¶¶ 304-09, 316.) This allegation by Plaintiffs is part of their argument on proximate causation of their injuries. If the Saudi Committee was not "incentivizing terrorism," then the banking services provided by the Bank to the Arab National Bank were not a proximate cause of injury. The Fleischer Statement is relevant because it addresses the "incentivizing terrorism" allegation. It reports that in 2002 the White House concluded that the Saudi Committee was not inciting violence or supporting terrorism.

The Fleischer Statement is also relevant to the Bank's state of mind in the relevant time period. The Fleischer Statement reports that the United Sates Government did not believe that the Saudi Committee was supporting terrorism in 2002. This corroborates the Bank's view and demonstrates the reasonableness and believability of the Bank witnesses who have explained what the Bank understood at that time about the Saudi Committee.

### D.  The Fleischer Statement is not barred by the sanctions order

Judge Gershon's sanctions order (*Linde v. Arab Bank, plc*, 269 F.R.D. 186 (E.D.N.Y. 2010)) does not address the use of United States government records that address Plaintiffs' allegations that the Saudi Committee was "incentivizing terrorism." As for state-of-mind issues under the ATA, the sanctions order specifically states that "Defendant is entitled to rely on the documents it did produce to make its case that it did not have the required state of mind." *Id.* at 204. The Bank produced many documents and supplied the testimony of many witnesses on the



Hon. Brian M. Cogan, U.S.D.J.
August 7, 2013
Page Six

subject of the Saudi Committee demonstrating the Bank's view that the Saudi Committee was a humanitarian effort. The sanctions order cannot bar use of public documents provided by the Bank that are publicly available and subject to judicial notice under Fed. R. Evid. 201.

## II.     THE POWELL STATEMENT IS ADMISSIBLE EVIDENCE

In May 2002, the Department of State released an official transcript of statements made by Secretary Powell in a "Meet the Press" interview. It is headed "U.S. Department of State" with the address "Secretary Colin L. Powell, Washington, DC, May 5, 2002." (DX 553.) As noted above, it is kept as an official record on the U.S. Department of State archive website.

In the State Department's record of the interview, Secretary Powell was asked whether the Saudis were being "duplicitous" about their humanitarian aid. His response explained information the State Department had from the Saudis and the humanitarian purpose of the Saudi Committee aid:

> "SECRETARY POWELL: The Saudis have – we've talked to them directly about this. They say that the donations that they are making and the telethon money they are raising are going through the International Committee for the Red Cross, going to UNRA, the United Nations Relief Agency, and going for humanitarian purposes to families, and not a reward for suicide bombing, but taking care of people in need. That is their position." (DX 553 at 4.)

When asked if he believed this, Powell answered "From what I have heard, yes." (DX 553 at 4.)

The Powell Statement is admissible under the hearsay exception for public records, Fed. R. Evid. 803(8), and the exception for trustworthy evidence, Fed. R. Evid. 807. (*See* the discussion of these Rules *supra*.) It is relevant because it concerns the allegations by the Plaintiffs that the Saudi Committee was "incentivizing terrorism" by rewarding suicide bombers, and it supports the reasonableness and believability of the Bank's witnesses. It is not barred by the sanctions order because, as explained above, the order does not address the use of United States government records that address Plaintiffs' allegations that the Saudi Committee was "incentivizing terrorism." For state-of-mind issues under the ATA, the sanctions order specifically states that "Defendant is entitled to rely on the documents it did produce to make its case that it did not have the required state of mind." *Linde*, 269 F.R.D. at 204. Therefore the sanctions order cannot bar use of public documents provided by the Bank that are publicly available and subject to judicial notice under Fed. R. Evid. 201.



Hon. Brian M. Cogan, U.S.D.J.
August 7, 2013
Page Seven

## CONCLUSION

The Bank therefore respectfully requests that the Court deny Plaintiffs' Motion No. 12. The jury is entitled to consider DX 553 and DX 834 and determine what evidentiary weight those documents deserve, just as it does with all other admissible evidence.

Respectfully submitted,

Shand S. Stephens

cc: Magistrate Judge Viktor V. Pohorelsky (by hand delivery)
All counsel of record (by email)